IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG SAUNDERS, | : | CIVIL ACTION |
|    Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN J. TENNIS, et al., | : | No. 09-CV-1916 |
|    Respondents | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                                               June 11, 2010
U.S. MAGISTRATE JUDGE

      Petitioner Craig Saunders filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. I must determine if Saunders is entitled to an evidentiary hearing to address his claim alleging the Commonwealth used its peremptory challenges to strike African-American women from the jury in violation of Batson v. Kentucky, 476 U.S. 79 (1986). Respondents filed a supplemental response to Saunders' petition for writ of habeas corpus, claiming an evidentiary hearing is impermissible.

      For the following reasons, an evidentiary hearing is permissible and could allow Saunders to prove factual allegations that would entitle him to federal habeas relief.

I.     Background[1]

      On September 30, 2004, Saunders was sentenced to three-and-one-half-to-seven years

---

[1] Because Saunders has a petition pending in state court under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541, et seq., see Docket, Commonwealth v. Saunders, No. CP-51-CR-0612351-2003 (Ct. Com. Pl. Phila. June 4, 2010) [hereinafter State Docket], the state court record is unavailable. Therefore, I ordered respondents to file all court records and documents of state court proceedings in this matter relevant to Saunders' habeas petition, particularly his Batson claim. See Order, Saunders v. Tennis, No. 09-cv-1916 (E.D. Pa. Mar.3, 2010). I have reviewed only the documents petitioner and respondents have filed.

imprisonment after a jury convicted him of conspiracy to commit escape of a prisoner. See Opinion at 5, Commonwealth v. Saunders, No. 2666 EDA 2006 (Pa. Super. Ct. Apr. 4, 2008) [hereinafter Super. Ct. Op.].[2]

Following the selection of the jury, Saunders' counsel raised a Batson claim, alleging the prosecutor engaged in purposeful discrimination by using eight of nine peremptory strikes on African-American women. See Voir Dire Tr., vol. I, 165, Sept. 10, 2004 [hereinafter Voir Dire Tr.]. The trial court acknowledged there "appear[ed] to be patterns by both the Defense and the Commonwealth." Id. However, it summarily denied Saunders' Batson challenge, stating:

> you cannot make out a Batson[ claim] if there are four African American women on the panel [a]nd that is the dominant racial demographic on the panel. So you do appreciate that while the Commonwealth may have used its strike[s] in that fashion. Clearly, the Commonwealth has agreed to four African American females. So you understand that you[r] challenge is not addressable. . . . The Commonwealth is not required to respond. But your objection is noted for the record. And the statistics are preserved, in given that a Batson's challenge has been made. These sheets -- my sheets, which are controlling sheets will not be destroyed. They will in fact be an exhibit in the quarter sessions file and sealed. . . . [T]hey will be sealed for subsequent[i]al appellate review [sic] should that be necessary. . . . [T]his issue is preserved for the future.

Id. at 166-68.

Saunders filed an untimely post-sentence motion, which was denied, and an untimely notice of appeal, which was dismissed. See Super. Ct. Op. at 12-13. Saunders' direct appeal rights were reinstated nunc pro tunc after he filed a petition under the Pennsylvania Post

---

[2] Saunders' habeas petition relates to only his conviction of conspiracy to commit escape of a prisoner, for which he was sentenced to three-and-one-half-to-seven years imprisonment. See Super. Ct. Op. at 5. Saunders also has been convicted of numerous other crimes, including rape and burglary, for which he was sentenced to 48-and-one-half-to-97 years imprisonment in a separate case. Id. at 2 n.2.

Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq. Id.

Saunders filed a pro se appeal alleging: (1) the evidence was insufficient to sustain his conviction; (2) the Commonwealth used its challenges to strike African-American women from the jury in violation of Batson v. Kentucky; (3) the trial court denied Saunders his right to confrontation by improperly limiting his cross-examination of an expert witness; (4) Saunders had a constitutional right to be indicted by a grand jury; and (5) Saunders' sentence was in violation of Blakely v. Washington, 542 U.S. 296 (2004). Id. at 1; Brief on Behalf Appellant at 5, 8-26, Commonwealth v. Saunders, No. 2666 EDA 2006 (Pa. Super. Ct. Oct. 4, 2007).

The Superior Court affirmed on April 4, 2008. See Super. Ct. Op. at 1. The Superior Court's analysis of Saunders' Batson claim recited the trial court's Pa. R.A.P. 1925(a) opinion and found no abuse of discretion. See Super. Ct. Op. at 11-12 (quoting Opinion at 6, Commonwealth v. Saunders, 2666 EDA 2006 (Ct. Com. Pl. Phila. Sept. 19, 2007) [hereinafter 1925(a) Op.]). The trial court's Rule 1925(a) opinion stated that Saunders' Batson claim was denied at trial after a full review. See 1925(a) Op. at 6 (citing Voir Dire Tr. 165-66). It found the Commonwealth had provided a race-neutral basis for each strike, id. (citing Voir Dire Tr. 162-65); four of ten jurors chosen were African-American females; and the dominant race and gender of the voir dire panel were African-American females. Therefore, the court held, Saunders could not make a prima facie Batson case and had no viable claim of purposeful discrimination. Id.

Saunders filed a petition for allowance of appeal to the Pennsylvania Supreme Court raising two issues: his Batson claim and a Confrontation Clause claim. See Petition for Allowance of Appeal at 5-9, Commonwealth v. Saunders, 258 EAL 2008 (Pa. Apr. 30, 2008)

3

[hereinafter Petition for Allowance of Appeal]. His allowance of appeal was denied on September 30, 2008. See Commonwealth v. Saunders, 958 A.2d 1047 (Pa. 2008) (table). Saunders did not file a petition for writ of certiorari with the United States Supreme Court. See State Docket at 32.[3]

On May 4, 2009, Saunders filed a timely federal Petition for Writ of Habeas Corpus, alleging: (1) the Commonwealth struck African-American women from the jury in violation of Batson; (2) the trial court improperly denied his right to confrontation by limiting Saunders' cross-examination of an expert witness; (3) the evidence was insufficient to sustain his conviction; (4) Saunders had a constitutional right to be indicted by a grand jury; and (5) Saunders' sentence was in violation of his Sixth Amendment right to a trial by jury. See Petition at 9. Saunders also requested copies of transcripts of recorded conversations and Daniel Olson's reports and notes because they are relevant to his sufficiency of evidence claim. See Memorandum of Law at 2, Saunders v. Tennis, No 09-1916 (E.D. Pa. May 4, 2009).

Because Saunders' second PCRA petition is still pending, on June 19, 2009, I recommended Saunders' habeas corpus petition be dismissed without prejudice explaining any second or successive federal habeas petition will be dismissed unless Saunders satisfies the strict requirements of § 2244(b)(2). See Report and Recommendation at 1-6, Saunders v. Tennis, No. 09-1916 (E.D. Pa. June 19, 2009). However, Saunders affirmatively asked the Court to rule on his May 4, 2009 habeas petition. See Order, Saunders v. Tennis, No. 09-1916 (E.D. Pa. Sept. 3,

---

[3] On April 15, 2009, Saunders filed a second PCRA petition, which included a claim that translations of phone conversations should have been excluded under collateral estoppel. See Petition for Writ of Habeas Corpus by a Person in State Custody at 5-6, Saunders v. Tennis, No. 09-1916 (E.D. Pa. May 4, 2009) [hereinafter Petition]. This second PCRA petition is pending in state court. See Petition at 6; State Docket at 1, 34.

4

2009); Written Objections to the Report and Recommendation, Saunders v. Tennis, No. 09-1916 (E.D. Pa. June 29, 2009).

Upon review of Saunders' habeas petition and respondents' brief and attachments, I found an evidentiary hearing would potentially advance Saunders' Batson claim and appointed counsel, Peter D. Hardy. See Order, Saunders v. Tennis, No. 09-cv-1916 (E.D. Pa. Mar. 18, 2010); Order, Saunders v. Tennis, No. 09-cv-1916 (E.D. Pa. Mar. 3, 2010). On April 14, 2010, respondents filed a supplemental response, claiming an evidentiary hearing is impermissible because Saunders: (1) failed to develop the factual basis of his Batson claim in state court proceedings; and (2) cannot demonstrate he would be entitled to habeas relief even if his factual allegations are true. See Supplemental Response to Petition for Writ of Habeas Corpus at 2-14, Saunders v. Tennis, No. 09-1916 (E.D. Pa. Apr. 14, 2010) [hereinafter Supplemental Response].

II.     Discussion

    A.     Saunders Attempted to Develop his Batson Claim.

28 U.S.C. § 2254(e)(2) limits when an evidentiary hearing is permitted if the petitioner "has failed to develop the factual basis of a claim in [s]tate court proceedings.[4]" See Thomas v. Varner, 428 F.3d at 498 (quoting § 2254(e)(2)). Failing to develop a claim requires "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000).

---

[4] If a petitioner has failed to develop the factual basis of a claim in state court, a federal court cannot hold an evidentiary hearing unless the applicant shows the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered, or the applicant shows the "facts underlying the claim would be sufficient to establish . . . that but for the constitutional error, no reasonable factfinder would have found the applicant guilty." § 2254(e)(2).

5

Diligence depends on whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court. Id. at 435. "[D]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court." Boyd v. Waymart, 579 F.3d 330, 357 (3d Cir. 2009) (Scirica, J., concurring) (quoting Williams v. Taylor, 529 U.S. 420, 437 (2000)).

A petitioner will be subject to § 2254(e)(2) only if his actions caused the deficiency in the state court record. Hughes v. Beard, 2007 WL 2791423, at *5 (E.D. Pa. Sept. 25, 2007) (Katz, S.J.); see Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000) (evidentiary hearing permissible where state court prevented petitioner from developing the factual record). Therefore, a petitioner has not failed to develop the factual basis of a claim where a trial judge's actions prevented petitioner from developing the basis of his claim. See Love v. Morton, 112 F.3d 131, 136 (3d Cir. 1997).

For example, in Love, during the testimony of the Commonwealth's fourth witness, the trial judge was notified of a family emergency, and, within fifteen minutes, abruptly declared a mistrial and left the courtroom. See id. at 134-35. At that time, neither the trial judge nor counsel considered or discussed the implications of a mistrial, such as the possibility of a double jeopardy issue. Id. at 135. Another judge was assigned to begin a new trial the following morning. Id. Defense counsel requested the new trial judge dismiss the charges on double jeopardy grounds. Counsel recounted the events leading to mistrial, but the original trial judge was unavailable to fully develop the factual basis of the claim. Id. at 136. Love's request was denied, and he was convicted. Id. at 135. Love appealed, alleging his conviction was invalid because his second trial violated double jeopardy principles. The Superior Court affirmed, and

the Supreme Court denied certification. Id. Love filed a habeas petition and the district court conducted an evidentiary hearing to allow him to fully develop the factual basis of his claim. Id. at 135-36. The Third Circuit found the evidentiary hearing was proper because factors other than petitioner's actions prevented a factual record from being developed. Id. at 136.

Similarly, factors other than Saunders' actions prevented him from fully developing the factual basis of his Batson claim. Saunders timely raised a Batson claim after selection of the jury, see Lewis v. Horn, 581 F.3d 92, 101-02 (3d Cir. 2009), alleging the prosecutor purposefully discriminated against African-American women, see Voir Dire Tr. 165. Saunders' timely objection gave the trial court an opportunity to promptly consider the issue during jury selection and develop a complete appellate record. Abu-Jamal v. Horn, 520 F.3d 272, 281-82 (3d Cir. 2008), vacated on other grounds by Beard v. Abu-Jamal, 130 S. Ct. 1134 (2010); see Johnson v. California, 545 U.S. 162, 172-74 (2005) (prosecutor's ability to respond to, and court's ability to promptly rule on, suspicions that discrimination may have infected the jury selection process remedies any needless uncertainty present in inquiries of discriminatory purpose). Instead, the trial judge ruled the prosecutor did not need to offer any race-neutral basis for his juror strikes. Id. at 165-67. This ruling effectively prevented Saunders from developing a complete record to support his Batson claim.

Saunders properly preserved his Batson claim on appeal to the Superior Court, which summarily affirmed the trial court based on its Rule 1925(a) opinion. See Super. Ct. Op. at 11. The trial court's Rule 1925(a) opinion stated defense counsel's Batson claim was denied at trial after a full review and the Commonwealth had provided a race-neutral basis for each strike, citing the voir dire transcript. See 1925(a) Op. at 6 (citing Voir Dire Tr. 162-66). This ruling

7

suggested, apparently erroneously, the record on the Batson claim had been fully developed. My review of the transcript, however, uncovered no race-neutral explanation for the Commonwealth's peremptory strikes. See Voir Dire Tr. 162-67; see also Super. Ct. Op. at 11 (noting the record "contains nothing more than the trial court identifying the race and gender of the potential jurors who were struck by the parties. . . .").

Accordingly, the state courts' actions prevented Saunders from fully developing the factual basis of his Batson claim.

      B.      An Evidentiary Hearing Would Advance Saunders' Batson Claim.

Even if a hearing is permissible, I have discretion to grant the evidentiary hearing. See Campbell, 209 F.3d at 287. In determining whether to hold an evidentiary hearing, I must "consider whether such a hearing could enable [Saunders] to prove [his] factual allegations, which, if true, would entitle [him] to federal habeas relief." Schriro v. Landrigan, 127 S. Ct. 1933, 1940 (2007); see Campbell, 209 F.3d at 287 (whether hearing would have the potential to advance petitioner's claim); Lesko v. Lehman, 925 F.2d 1527, 1536, 1540 (3d Cir. 1991).

      1.      Standard of Review

State court decisions merit substantial deference. See 28 U.S.C. § 2254(d)(1). A writ of habeas corpus cannot be granted unless I find the state court's adjudication of the merits of Saunders' claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). I must presume the state court's findings of fact are correct and Saunders must rebut that presumption of

correctness by clear and convincing evidence. See § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003) (Kelly, S.J.).

To constitute an "adjudication on the merits," the state court decision must have "preclusive effect," i.e., it must finally resolve the claim on its merits, not on a procedural or other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009) (citing Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)).

A state court ruling is "contrary to" clearly established Supreme Court precedent for the purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06; Jamison v. Klem, 544 F.3d 266, 274-75 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court.[5] Williams, 529 U.S. at 404-05; see Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); Jamison, 544 F.3d at 274-75.

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court cases, but "unreasonably applies it to the facts of the particular prisoner's case." Williams, 529 U.S. at 407-

---

[5] District court and appellate court decisions applying Supreme Court precedent, however, may amplify Supreme Court precedent. Hardcastle v. Horn, 368 F.3d 246, 256 n.3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)).

9

08; Jamison, 544 F.3d at 275 (quoting Matteo, 171 F.3d at 887). When making the "unreasonable application" inquiry, I must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409; see also Matteo, 171 F.3d at 891 ("whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [Supreme Court precedent]"). A court that unreasonably extends an established rule to a new context where it should not apply, or unreasonably fails to extend such a rule to a new context where it should apply, may be deemed to have unreasonably applied the correct rule. Williams, 529 U.S. at 407; Jamison, 544 F.3d at 275 (quoting Matteo, 171 F.3d at 887). "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles, 129 S. Ct. at 1413. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); see also Douglas v. Cathal, 456 F.3d 403, 417 (3d Cir. 2006) (grant of writ inappropriate where state determination was not objectively unreasonable, even where reasonable jurists may disagree about the correct disposition of the underlying claim). I also may not grant habeas relief simply because the state court applied federal law erroneously or incorrectly. Renico v. Lett, 130 S Ct. 1855, 1862 (2010). Rather, I must determine whether the state court's "determination was unreasonable – a substantially higher threshold." Knowles, 129 S.Ct. at 1420 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)); see Renico, 130 S. Ct. at 1866 (federal habeas court may not second-guess the reasonable decisions of state courts).

  2.  Saunders' Batson Claim

The Equal Protection Clause prohibits the use of peremptory challenges to purposefully

exclude potential jurors based on race. Batson, 476 U.S. at 89. Batson established a three-step procedure for determining whether the prosecution violated the Equal Protection Clause based on race: (1) a defendant must establish a prima facie case of purposeful discrimination; (2) if a prima facie case is established, the prosecutor must give a race-neutral explanation for the strike; and (3) if a neutral explanation is given, the trial court must determine whether the defendant has shown purposeful discrimination. Id. at 94, 97-98.

A prima facie case will be found if the evidence is sufficient to permit the trial judge to draw an inference that discrimination has occurred in the prosecutor's use of peremptory challenges. Johnson, 545 U.S. at 170. The first step of Batson is not intended "to be so onerous that a defendant would have to persuade the judge – on the basis of all the facts, some of which are impossible for the defendant to know with certainty – that the challenge was more likely than not the product of purposeful discrimination." Id.

Five factors are relevant to the prima facie inquiry: (1) the number of racial group members in the panel; (2) the nature of the crime; (3) the race of the defendant; (4) a pattern of strikes against racial group members; and (5) the questions and statements during the voir dire. Holloway v. Horn, 355 F.3d 707, 722 (3d Cir. 2004) (citation omitted); see Batson, 476 U.S. at 96. The trial court examines all relevant circumstances, including the pattern of strikes against the cognizable racial group, and the prosecutor's questions and statements during voir dire and in exercising the challenges. Batson, 476 U.S. at 96-97. "For example, a 'pattern' of strikes against [African-American] jurors included in the particular venire might give rise to an inference of discrimination." Id. at 97.

Respondents focus their prima facie argument on the statistics, such as the strike rate and

11

lack of information about the exclusion rate,[6] of the venire panel. See Supplemental Response at 4-8, Saunders v. Tennis, No. 09-1916 (E.D. Pa. Apr. 14, 2010); Response to Petition for Writ of Habeas Corpus at 10-12, Saunders v. Tennis, No. 09-1916 (E.D. Pa. Jan. 15, 2010) [hereinafter Response]. A high strike rate alone may be sufficient to establish a prima facie case. Brinson v. Vaughn, 398 F.3d 225, 235 (3d Cir. 2005); see Abu-Jamal, 520 F.3d at 293.[7] However, a prima facie case of purposeful discrimination can be made without evidence of strike rate.[8] Abu-Jamal, 520 F.3d at 290; see Lewis, 581 F.3d at 103. A pattern[9] showing eight of nine peremptory strikes

---

[6] The strike rate is the number of peremptory strikes the prosecutor used to remove African-American jurors compared with the prosecutor's total number of peremptory strikes exercised. The exclusion rate is the percentage of exercised challenges used against African-American potential jurors compared with the percentage of African-American potential jurors known to be in the venire. See Abu-Jamal, 520 F.3d at 290.

[7] Respondents argue, and the trial court noted, that African-American females were the dominant race and gender of the venire panel; therefore, Saunders had no viable Batson claim. See Supplemental Response at 5-6; 1925(a) Op. at 6. Although African-American females comprised the majority of the venire panel at the time of the objection, a finding that no pattern of discrimination existed is only available if the composition of the panel was composed of almost entirely of the discriminated group. See Abu-Jamal, 520 F.3d at 293. Moreover, the full record of the venire is currently unavailable. See Supplemental Response at 5 n.3.

[8] Further, the state courts' opinions did not address the strike rate or exclusion rate, and I do not have all the voir dire information from the state court record because Saunders has a PCRA petition pending. See Voir Dire Tr. 167 (trial judge suggested all the jury venire information is available in the state court record); see also Letter from the Honorable Renee Cardwell Hughes to Peter D. Hardy, Re: Saunders v. Tennis et. al. E.D. Pa. No, 09-CV-1916 (May 24, 2010).

[9] Respondents argue Saunders Batson claim fails to challenge a specific juror(s), and therefore it is impossible to determine which potential juror(s) the prosecutor improperly struck. See Supplemental Response at 13. However, the burden is not on Saunders to prove with certainty that the prosecutor engaged in intentional discrimination with respect to each juror in question. His burden is to show only that it is more likely than not that the prosecutor engaged in intentional discrimination with respect to at least one of the jurors he struck. Wilson v. Beard, 426 F.3d 653, 670 (3d Cir. 2005).

on African-American women[10] is "certainly strong enough to suggest an intention of keeping [African-Americans] off the jury." Holloway, 355 F.3d at 722; see also Jones v. Ryan, 987 F.2d 960, 971 (3d Cir. 1993) (inference that prosecutor used his peremptory challenges to exclude African-Americans from jury panel supported by fact that the prosecutor exercised three of four peremptory challenges on African-Americans and resulting jury comprised of one African-American and eleven Caucasians). Compare Brinson, 398 F.3d at 227 (prosecutor used thirteen of fourteen peremptory strikes on African-Americans); Holloway, 355 F.3d at 722 (prosecutor used seven of eight peremptory strikes on African-Americans at the time of defense's objection and eleven of twelve overall) with Abu-Jamal, 520 F.3d at 289 (use of fifteen of twenty peremptory strikes to remove eight African-American potential jurors did not establish prima facie case).[11]

The trial court's ruling, and the Superior Court's affirmance, that Saunders' Batson challenge failed simply because the Commonwealth agreed to four African-American females on the jury, see 1925(a) Op. at 6; Voir Dire Tr. 166, was contrary to clearly established Supreme Court precedent, see Williams, 529 U.S. at 404-06. Batson was "designed to ensure that a State does not use peremptory challenges to remove any [African-American] juror because his [or her] race." Brinson, 398 F.3d at 233 (quoting Batson, 476 U.S. at 99 n.22). A prosecutor's decision

---

[10] Although the Supreme Court has not identified African-American females as a protective group, Batson forbids intentional discrimination on the basis of race or gender. J.E.B. v. Alabama, 511 U.S. 127, 130-31 (1994). Further, gender and race are overlapping protective categories. Id. at 145.

[11] Abu-Jamal is also distinguishable from this case because the defendant in Abu-Jamal raised his Batson claim for the first time on direct appeal to the Pennsylvania Supreme Court, Abu-Jamal, 520 F.3d at 284, whereas Saunders timely objected during voir dire, see Voir Dire Tr. 165-66.

to refrain from discriminating against some potential African-American jurors does not cure his discrimination against others. Brinson, 398 F.3d at 228, 233 (three African-Americans were on the jury and prosecutor still had six strikes remaining); Holloway, 355 F.3d at 720 (three African-Americans were on the jury); Jones, 987 F.2d at 971 (one African-American on the jury).

Similarly, the race of the trial judge is legally irrelevant to Saunders' Batson claim. Respondents improperly suggest a non-African-American female judge would somehow be less sensitive to racial or gender discrimination or less able to apply constitutional protections. See Supplemental Response at 7; Response at 10 n.6; cf. Brinson, 398 F.3d at 233 (state court clearly wrong in holding the fact the victim, perpetrator, and witness were all African-American precluded a finding of prima facie racial discrimination).

The trial court's finding that Saunders' Batson claim failed because the Commonwealth provided a race-neutral basis for each strike, see 1925(a) Op. at 6 (citing Voir Dire Tr. 162-65), was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, see § 2254(d). The trial court told the prosecutor he did not have to respond to Saunders' Batson challenge, and therefore, the prosecutor did not provide a race-neutral basis for his juror strikes. See Voir Dire Tr. 167. The transcript, including the section the trial court cited to its Rule 1925(a) opinion, includes no mention of the prosecutor's race-neutral basis for his strikes. See Super. Ct. Op. at 11; Voir Dire Tr. 162-67; see also, supra Section II.A., at 8.[12] These rulings precluded the trial court from conducting the required Batson inquiry. No evidence supports the trial court's ruling regarding the prosecutor's race-neutral basis; therefore,

---

[12] Respondents claim the prosecutor offered race-neutral explanations for his peremptory strikes off the record. See Supplemental Response at 12. This is speculation, and is not entitled to deference. See § 2254(d)(2).

14

the state courts' opinions are not entitled to deference. See § 2254(d). The state courts' findings are not being second guessed, as respondent claims, see Supplemental Brief at 8, because there is no legal or evidentiary basis for trial court's ruling or the Superior Court's affirmance. See Renico, 130 S. Ct. at 1866.

Accordingly, I find an evidentiary hearing could enable Saunders to prove the factual allegations of his Batson claim, which, if true, would entitle Saunders to federal habeas relief because the state courts' findings are not entitled to deference and the record, available to me, may support an inference of discrimination in the prosecutor's use of peremptory challenges under Batson. See Schriro, 127 S. Ct. at 1940. At the hearing, the respondents will have the opportunity to make a full record in response to the Batson challenge. See Batson, 476 U.S. at 100; Brinson, 398 F.3d at 233, 235; Johnson, 40 F.3d at 661-62 (3d Cir. 1994).[13]

    3.    Proper Venue for Evidentiary Hearing

Respondents request the evidentiary hearing should be conducted in state court because (1) comity demands the state court be given the first opportunity to address and develop the record, and (2) Justice Scalia suggested, during an oral argument before the United States Supreme Court, that the state courts could be reversed for not holding an evidentiary hearing and then the case could be remanded to the state court to conduct the evidentiary hearing. See Supplemental Response at 14-15 & n.8 (citing Transcript of Proceedings, Knowles v. Mirzayance, 2009 U.S. Trans. LEXIS, at *3-4 (Jan. 13, 2009)).

I disagree. First, a hypothetical presented during oral argument is not law. Second,

---

[13] Evidence respondents may provide include the prosecutor's recollection of voir dire along with his trial notes. See Holloway, 355 F.3d at 725.

comity does not require a remand to develop and address the second step of Saunders' Batson claim.  Comity gives state courts the first opportunity to review a petitioner's claim that his state court conviction violates federal law, and provide necessary relief.  Williams, 529 U.S. at 437 (quoting O'Sullivan v. Boerckel, 526 U.S., 838, 844 (1999)).  The state courts have had this opportunity.

Third, in cases where the defendant had made a timely Batson objection, but the trial judge failed to rule whether defendant had established a prima facie case, the case is remanded to the district court for an evidentiary hearing to allow the Commonwealth to provide race-neutral reasons for any strikes against African-Americans.  See Brinson, 398 F.3d at 233, 235 (remanding case to district court); Johnson v. Love, 40 F.3d 658, 661-62 (3d Cir. 1994) (remanding case to district court); cf. Boyd, 579 F.3d at 357 (Sloviter, J., dissenting) (terms of evidentiary hearing before a district judge equally applicable to a hearing before a magistrate judge).

An appropriate order follows.