**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG SAUNDERS | : | CIVIL ACTION |
| v. | : | |
| FRANKLIN J. TENNIS, et al. | : | NO. 09-1916 |

**MEMORANDUM**

**Baylson, J.**                                                                 **May 26, 2011**

I.     **Introduction**

On May 4, 2009, Craig Saunders filed a pro se petition for habeas corpus pursuant to 28

U.S.C. § 2254, naming as Respondent Franklin J. Tennis, Superintendent of Pennsylvania State

Correctional Institution at Rockview, and raising five grounds for relief (ECF No. 1):

1.     Violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), regarding the
       Commonwealth's use of peremptory strikes;

2.     Insufficiency of the evidence to sustain conviction;

3.     Violation of Confrontation Clause by improperly limiting cross-examination of
       expert;

4.     Violation of right to be indicted by grand jury; and

5.     Sentencing violation, pursuant to <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).[1]

The petition was referred to Magistrate Judge Timothy R. Rice for a Report and

Recommendation (R & R) on June 10, 2009 (ECF No. 3).   Finding that state court proceedings

under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541-

---

[1] Saunders has conceded the grand jury and <u>Blakely</u> claims and raises no objections to the
recommendations of the magistrate judge on these claims.  <u>See</u> Report and Recommendation at 6
n.5 (citing Sept. 8, 2010 Tr. at 109); at 7 n.6 (citing Sept. 8, 2010 Tr. at 109).

9546, had not terminated, Magistrate Judge Rice issued an R & R recommending that the petition be dismissed without prejudice unless Saunders were to affirmatively seek judicial resolution of his current habeas petition (ECF No. 4). Saunders requested that he be allowed proceed on his exhausted claims (ECF No. 5), and this Court ordered the case remanded to Magistrate Judge Rice for that purpose (ECF No. 6). The Commonwealth filed a response to the petition on January 15, 2010 (ECF No. 16). On March 19, 2010, Magistrate Judge Rice granted Saunders's application to proceed in forma pauperis and appointed counsel (ECF No. 20). On September 30, 2010, following a September 8, 2010 evidentiary hearing on Saunders's Batson claim, Magistrate Judge Rice issued an R & R that this petition for writ of habeas corpus be denied and finding no probable cause for a certificate of appealability (ECF. No. 38).

## II.    Factual Background

Between September 7 and 30, 2004, the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas presided over a jury trial that resulted in Saunders's conviction of one count of conspiracy to commit escape of a prisoner. Commonwealth v. Saunders, 2666 EDA 2006, at *1 (Pa. Ct. Comm. Pl. Sept. 13, 2007) (ECF No. 16-1). Saunders was tried along with co-defendants Kevin Holmes and Reginald Nesmith. Id. at *2.

The Pennsylvania Superior Court outlined the facts of the case in its opinion affirming Saunders's conviction on a nunc pro tunc appeal. Commonwealth v. Saunders, 946 A.2d 776, 779 (Pa. Super. 2008). The Superior Court opinion relied largely on the facts as described in the opinion by Judge Hughes denying Saunders's post-trial motions, which itself draws heavily from the trial transcripts. See Saunders, 2666 EDA 2006.

The evidence at trial, taken in the light most favorable to the prosecution, showed that

Saunders had ongoing phone contact and visitations with a prisoner named Selwyn Brown, during which they used a code common to the "Five-Percent Nation"[2] to communicate and that Saunders and Brown used this code to develop a plan for Brown to escape from prison.

The trial evidence showed that on July 2, 2001, while Brown appeared in Philadelphia Family Court, at 1801 Vine Street, witnesses alerted police to the presence of men with guns walking down 18th Street. Id.; Sept. 14, 2004 Trial Transcript at 62-63, 82. When the police arrived, they found four men standing by a tan automobile at 18th and Wood Streets and a chase ensued. Id. at 779-80; Sept. 22, 2004 Tr. at 61-62. The automobile was left running at 18th and Carlton Streets and was later found to be registered to Brown. Id. at 780; Sept. 22, 2004 Tr. at 61-62, 126. At least one gun was retrieved at the scene. Id.; Sept. 20, 2004 Tr. at 55, 58; Sept. 22, 2004 Tr. at 20.

At trial, the prosecution called two experts. Daniel Olsen, supervising forensic examiner in the cryptanalysis and racketeering records unit for the Federal Bureau of Investigation, testified as an expert in code deconstruction. Id. at 779. George Corbiscello, Senior Investigator for the Monmouth County Sheriff's Office, testified as an expert on the Five-Percent Nation and its oral and written communications, including on a form of communication called the "Supreme Alphabet." Id.; Sept. 21, 2004 Tr. at 113-55. Both experts translated the conversations between Saunders and Brown. Id.; Sept. 20, 2004 Tr. at 244-65; Sept. 21, 2004 Tr. at 134-55. The conversations between Saunders and Brown, as interpreted by expert testimony, revealed that

---

[2] The Five-Percent Nation breaks the world's population into three groups: the "Ten Percent" (white people, who are rich and subjugate the poor), the "Eighty-five Percent" (people of color subjugated by the Ten Percent); and the "Five Percent" (African Americans who have achieved self knowledge and believe it is their job to lead the Eighty-five Percent to righteousness. R & R at 2, n.1.

Saunders had spoken with Brown in person and on the telephone on multiple occasions and had promised Brown to assist in Brown's escape from Family Court.  Id.; Sept. 15, 2004 Tr. at 31-32, 36, 51-52; Sept. 20, 2004 Tr. at 246-51; 268-727.  The plan called for a car to be waiting on 18th Street for Brown to exit Family Court and for men with guns to confront the sheriffs, secure Brown, and escape in the waiting car.  Id.; Sept. 14, 2004 Tr. at 196-97.

On September 30, 2004, following his conviction by the jury on the conspiracy charge, Saunders was sentenced to 3.5 to 7 years imprisonment.[3]

## III.    Legal Standards

Pursuant to the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), a federal court is precluded from granting habeas relief on any claim "adjudicated on the merits" unless the state court's adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or "was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding."  28 U.S.C. § 2254(d).  A federal court exercising habeas review "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

---

[3]Saunders has also been convicted of numerous other crimes, including rape and burglary, for which he was sentenced to forty-eight-and-one-half to ninety-seven years imprisonment. Saunders, 946 A.2d at 778 n.2.  Counsel for Saunders on this habeas petition confirmed in a May 2, 2011 letter to chambers that Saunders remains incarcerated.  The record is not clear as to whether Saunders is now serving the sentence he received on the "conspiracy to commit escape of a prisoner" charge or whether the sentence imposed on that crime is running consecutive to, or concurrent with, the sentence for rape and burglary.  In any event, it appears that Saunders is either now serving, or will in the future serve, his sentence on the conspiracy conviction, and therefore he satisfies the "in custody" requirement of § 2254.  The Commonwealth has not disputed Saunders's standing under § 2254.

established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 411 (2000). To grant the writ, the federal court must conclude that "the state court's application was unreasonable." Williams v. Beard, 637 F.3d 195, 204 (3d Cir. 2011) (citing Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)).

In ruling on objections to the R & R of a United States Magistrate Judge, this Court reviews de novo only those R & R findings to which a petitioner specifically objects. Nara v. Frank, 488 F.3d 187, 194 (3d Cir. 2007) (citing United States v. Peretz, 501 U.S. 923 (1991)); 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72. The district court may accept, reject, or modify in whole or in part the Magistrate's findings. 28 U.S.C. § 636(b)(1). Reliance on the findings of the Magistrate is permitted to the extent the district court deems proper. United States v. Raddatz, 447 U.S. 667, 676 (1980).

## IV.    Discussion

### A.    *Batson* Challenge

Saunders, who is an African American male, argues that the Commonwealth violated his rights under the Fourteenth Amendment by exercising its peremptory challenges on the basis of race and/or gender in violation of Batson v. Kentucky, 476 U.S. 79 (1986). In Batson, the Supreme Court held that "deliberate or purposeful exclusion of African Americans from jury service violates the Equal Protection clause." Williams, 637 F.3d at 205 (citing Batson, 476 U.S. at 84).[4]

_____

[4] The Supreme Court has recognized that the principles articulated in Batson apply to exclusion of jurors based on gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 129 (1994). While the race of the eight African American female jurors excluded by the Commonwealth has been the dominant focus of Saunders's claim, Saunders has raised gender consistently from the time of trial, on direct review, in his habeas petition, and at the evidentiary hearing before Magistrate

Pursuant to Batson, the Court applies a three-step burden-shifting analysis to Saunders's claim. At step one, "a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race." Williams, 637 F.3d at 205 (citing Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). If a defendant establishes a prima facie case, the burden shifts to the Commonwealth at step two to offer race- and/or gender-neutral bases for striking the juror in question. Id. Finally, "in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." Id.

## 1. Relevant Background

### a. State Court Proceedings

The record reflects that the trial court conducted voir dire on September 9 and 10, 2004. The original venire consisted of 25 individuals, 13 of whom were African American women. At the end of the individual voir dire on September 10, 2004, Tr. at 162, the transcript states "(off the record)." Upon resuming on the record, Judge Hughes reviewed the race and gender of each stricken juror and of the ten jurors seated up to that point. At that time, the prosecutor, James Berardinelli, had used eight of his nine peremptory strikes to remove eight African American women from the panel. Id. Ten jurors had already been seated: four African American women, one white male, three white females, and two African American males. Id. at 164-65.

_____

Judge Rice. See Sept. 10, 2004 Tr. at 162-68; Resp. to Habeas Pet. Ex. B at 15-18; Habeas Pet. at 13; Sept. 8, 2010 Tr. at 23, 76-77. Saunders has again raised the gender of the stricken jurors in his objections to Magistrate Judge Rice's R & R. See R & R at 7-17. Further, although Judge Hughes's conclusions were specific as to race, the Court recognizes that Judge Hughes considered the gender composition of the stricken and accepted jurors at trial. Sept. 10, 2004 Tr. at 162-68. At trial and in her § 1925 opinion, Judge Hughes placed findings to this effect on the record. See Sept. 10, 2004 Tr. at 162-68; Saunders, 2666 EDA 2006, at *6. Thus, to the extent Saunders is making a claim regarding gender, this Court's analysis regarding the race-neutral grounds for exclusion applies to gender, as well.

Defendants had, by that point, struck one white female, one African American female, and five white males. Sept. 8, 2010 Tr. at Ex. at R2.

Judge Hughes observed "what appeared to be patterns by both the defense and the Commonwealth" regarding racial composition of jurors struck up to that point. Judge Hughes then said "let me know how you wish to proceed." See R & R at 19; Sept. 9, 2004 Tr. at 165. Defense counsel then raised a formal Batson challenge, stating concerns that "[a]ll of the Commonwealth's strikes have been Black females." Id. The following exchange ensued between Judge Hughes and defense counsel:

> Court: [Y]ou do understand that you cannot make out a Batson[ challenge] if there are four African American women on the panel. And that is the dominant racial demographic on the panel. . . .

> Defense: We can't conclude by the utilization of all the strikes against Black females that the Commonwealth is engaging in neutral methodology.

> Court: I think that you cannot conclude that, counsel. If there was no African American females seated on this panel, you can rightfully say the Commonwealth has stricken a particular class. But given that there have been four African American females that the Commonwealth has agreed to place on the panel, and at least one other African American female the Commonwealth desires who was stricken by the Defense.
>      Accordingly, this panel is sufficient only as it relates to the Caucasian males, and no strikes have been exercised by the defense. So at this point, I cannot deem that you have made out a Batson[] claim. The Commonwealth is not required to respond, But your objection is noted for the record. And the statistics are preserved, . . . given that a Batson[] challenge has been made. These sheets – my sheets, which are the controlling sheets, will not be destroyed. They will in fact be an exhibit in the quarter sessions file and sealed. There is no reason for them to be open to the public. But they will be sealed for subsequent appellate review, should that be necessary. We're all clear gentlemen?

> Mr. Berdardinelli: Yes.

> Mr. Server: Yes.

Mr. Harrison: Yes.

Mr. Nicholson: Yes.

Court:  Anybody else need me to say anything to preserve the record?

Mr. Server: We all join.

Court:  I but this issue is preserved for the future. [sic]
        (A short recess was taken at this time.)

Sept. 10, 2004 Tr. at 166-68.  The prosecutor did not state on the record, at that time, the basis

for any of his strikes, nor did Judge Hughes or defense counsel request that he do so.  Defense

counsel did not argue for any further rulings on the <u>Batson</u> issue.  Although not reflected in the

record, selection of the jury was then completed and the trial proceeded.

According to the trial record, as reconstructed by Magistrate Judge Rice in the September

8, 2010 evidentiary hearing, and as discussed in detail below, an initial discussion on the <u>Batson</u>

challenge took place at the time the record states "off the record," in the judge's robing room,

immediately after completion of the voir dire of individual venire persons.  Sept. 8, 2010 Tr. at

22; Sept. 9, 2004 Tr. at 162.

### b.    <u>Direct Review</u>

 Saunders raised the <u>Batson</u> issue again on direct appeal.  Judge Hughes issued an

opinion, pursuant to Pa. R. A. P. 1925(a), rejecting the post-trial motions filed by Saunders.

<u>Saunders</u>, 2666 EDA 2006, at *6.  Rejecting the <u>Batson</u> claim a second time, Judge Hughes

stated that

> The Commonwealth did strike eight (8) African American females during the voir dire
> process and provided a race neutral basis for each strike.  The Commonwealth's position
> was further supported by the fact that of the ten jurors chosen, four (4) were African
> American females.  These four were the dominant race and gender of the panel.  Given

that African American females comprised the majority group on the panel and each strike exercised by the Commonwealth was race neutral, the appellant has no viable claim of purposeful discrimination. Appellant's Batson challenge fails as he cannot make out a prima facie case showing that the circumstances created an inference that the prosecutor struck one or more prospective jurors on the basis of race.

Id. (Emphasis added).

Saunders filed an untimely notice of appeal, which was dismissed. Saunders, 946 A.2d at 780. Saunders's subsequent and timely PCRA petition resulted in the reinstatement of his direct appeal rights, nunc pro tunc, and following a hearing held pursuant to Commonwealth v. Grazier, 713 A.2d 81 (1998), Saunders received permission to proceed pro se. Id.

The Superior Court affirmed the conviction. The Superior Court dealt at length with the Batson claim. Initially, in footnote 8, the Superior Court reviewed the nature of the *Batson* objection made by defense counsel at trial, and also summarized its understanding of the establishment of a prima facie case for improper use of peremptory challenges. 946 A.2d at 782, citing and relying on a Pennsylvania Supreme Court decision, Commonwealth v. Washington, 927 A.2d 586, 609-610 (2007), and Johnson v. California, 545 U.S. 162 (2005). The Superior Court then cited from Judge Hughes's §1925 opinion, and observed in footnote 10, that a portion of the discussion concerning Batson occurred off the record. The Superior Court concluded that it did not find any abuse of discretion in the manner in which Judge Hughes had handled the Batson issue.[5]

---

[5] As noted and discussed below, although the Superior Court did not fully follow United States Supreme Court precedent on Batson procedure, that omission may reflect Saunders's pro se brief on direct appeal, which was limited to discussion of the first step of Batson, establishing a prima facie case of discrimination and claiming that Judge Hughes had failed to proceed to step two. As noted below, Saunders's pro se appellate brief does not discuss step three at all and this may be a reason why the Superior Court did not discuss it. Alternatively, the Superior Court may have concluded, as discussed below, that Judge Hughes's findings encompassed a step three

Saunders filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on September 30, 2008. Commonwealth v. Saunders, 958 A.2d 1047 (Pa. 2008).[6]

### c.     Habeas Petition

On June 11, 2010, Magistrate Judge Rice issued an opinion finding Saunders entitled to an evidentiary hearing to address his claim that the Commonwealth used its peremptory challenges to strike African-American women from the jury, brought pursuant to Batson (ECF No. 25).[7]  At the evidentiary hearing, held on September 8, 2010 (ECF Nos. 35, 36), Magistrate Judge Rice heard testimony by the prosecutor and received a certificate submitted by the trial judge who presided over Saunders's original trial.

### 2.     Evidentiary Hearing and Trial Judge Certificate

Prior to the evidentiary hearing, the Commonwealth moved pursuant to 28 U.S.C. § 2245 to admit a certificate by Judge Hughes in lieu of direct testimony.   See Motion to Admit Certificate by the Honorable Renee Cardwell Hughes; ECF No. 32.  Saunders did not object to the general admissibility of the certificate, only to certain portions of paragraphs 8 and 9, which Saunders argued "stray[ed]" beyond the judge's recollection of factual matters.  Sept. 8, 2010 Tr. at 4-5.  The magistrate judge admitted the certificate "to the extent it set forth historical facts[,]"

_____

discussion.

[6] Saunders filed a second PCRA petition on unrelated issues on April 15, 2009, and that petition is now pending.  Habeas Pet. at 5-6 (ECF No. 1).

[7] Due to the pending PCRA state court proceedings on Saunders's unexhausted claims, the magistrate judge found the state court record to be unavailable and ordered the parties to file in this court copies of all state court records and proceedings relevant to Saunders's Batson claim. ECF No. 25 at 1, n.1.

but struck the first several sentences of paragraph 8 on the basis that they constituted Judge Hughes's "speculation about trial counsel's strategy and motivations." R & R at 22.

### a. §2245 Certificate

Judge Hughes stated in her certificate that she had a "specific recollection of the jury selection in the <u>Saunders</u> case" and had reviewed the trial transcript, as well as her bench notes from voir dire. §2245 Certificate at ¶ 3; ECF No. 32-1. The certificate provides a summary of the events leading up to the defendants' objection that is consistent with the record as reflected in the description contained above. <u>Id.</u> at ¶¶ 5-7. The certificate then stated Judge Hughes's perceptions that the defendants made their objection as a trial tactic "not based on any objective behavior exhibited by the prosecutor" and that it was "obvious that the pattern of strikes used by both sides, considered in isolation could be construed as race-based." <u>Id.</u> at ¶ 8.

Judge Hughes's certificate continues:

Despite the fact that it was abundantly clear to me that each side had a specific selection strategy which was in fact race neutral, at a sidebar which everyone believed was being recorded, and unfortunately was not, I directed both the prosecution and the defense to explain their use of strikes in the selection of this jury. ADA James Berardinelli gave unequivocal, race-neutral explanations for each of his peremptory challenges.

<u>Id.</u>

According to Judge Hughes, she considered "the facts and responses of counsel, including the fact that the majority of the jurors selected at the time of the motion were African American and of that number exactly half the jury was comprised of African American women" and concluded that "neither side was engaging in race-based strikes, and that objecting counsel had failed to establish a prima facie showing of discrimination." <u>Id.</u> at ¶ 9.

The certificate went on to relate how, upon returning to the bench, Judge Hughes

"formally recited" the strike record and the racial composition of the panel, thus far, for the benefit of the defendants. Id. at ¶ 10. This sentence accurately reflects the record. The certificate also states, although these facts are not in the record, that Mr. Berardinelli then "asked to restate his reasons for striking each juror" and Judge Hughes explained that "[h]aving determined that the defense had not demonstrated a prima facie case," she determined it unnecessary for Mr. Berardinelli to restate his reasons. Id. Judge Hughes confirmed that defense counsel did not ask for those reasons to be "re-articulated" and stated that this occurred because all involved were "unaware that the sidebar was not recorded." Id.

Finally, Judge Hughes's certificate states that her bench notes confirmed the facts as related in the certificate and that she had provided her voir dire notes to the Commonwealth and Saunders's current counsel. Judge Hughes concluded that neither her notes nor the Official Quarter Session's file could be forwarded to this Court due to Saunders's pending PCRA proceeding. Id. at ¶¶ 11-12. Saunders's counsel does not appear to have objected to proceeding without Judge Hughes's bench notes within the official file.[8]

It is clear from the total state court record, including consideration of Judge Hughes's certificate, that no counsel requested that Judge Hughes make specific findings as to step three. The legal significance of this is discussed below.

### b.    Mr. Berardinelli's Testimony

On September 9, 2010, Magistrate Judge Rice held an evidentiary hearing on Saunders's Batson claim. Mr. Berardinelli, the only witness, testified as to the jury selection process, the

---

[8] At the evidentiary hearing, the Commonwealth discussed with Magistrate Judge Rice that Judge Hughes had bench notes that she did not provide to the Commonwealth, but referenced them in her conversation with counsel. Sept. 8, 2010 Tr. at 127-28.

circumstances surrounding the <u>Batson</u> objection, and the reasons for his strikes.  Sept. 9, 2010 Tr. at 10-107.

Mr. Berardinelli testified that he and defense counsel engaged in a 10- to 15-minute discussion with Judge Hughes in her robing room prior to the judge placing the ruling on the record.  <u>Id.</u> at 22-25, 92-93, 96-97.  Mr. Berardinelli testified that, at that point, defense counsel raised the <u>Batson</u> objection, each side recited explanations for each strike, and Judge Hughes reviewed the race and gender of each stricken and seated juror.  <u>Id.</u>   The discussion was not on the record, nor was a court reporter present.  <u>Id.</u> at 94.  Mr. Berardinelli stated that he attempted to place his race-neutral explanations on the record when they returned to the courtroom, but Judge Hughes stopped him because she had not found defense to have established a prima facie case.  <u>Id.</u>  Mr. Berardinelli testified that "in hindsight," he should have placed his reasons on the record when Judge Hughes later gave him opportunity to do so.  <u>Id.</u> at 102.

Mr. Berardinelli also testified as to his general criteria for picking and striking jurors.  <u>Id.</u> at 31-34.  According to Berardinelli, he tends to select jurors originally from other parts of the state or country than Philadelphia[9] as they tend to be prosecution-oriented, that he looks for older jurors and law enforcement, utility, and transit workers; is likely to strike artists, social workers, and psychiatrists; and also evaluates general demeanor and whether they or a family member have been involved with the criminal justice system.  <u>Id.</u>

Having had opportunity to review the notes of testimony and contemporaneous notes from jury selection, <u>id.</u> at 39-42, Mr. Berardinelli testified as to his recollections of each stricken

---

[9]Although the record is not clear, the Court interprets this comment to refer to a juror's origins, as it is obvious that only Philadelphia residents are entitled to serve as jurors in criminal cases tried in Philadelphia.

juror, providing the following race- and gender-neutral reasons for his strikes:

- Juror R.J. had two nephews who had been arrested and she had attended the trial of one, although she believed them to have both been treated fairly. As well, she exhibited an inability to understand questions presented to during voir dire and on the written voir dire form; id. at 44-47;

- Juror M.H. had a son who had been incarcerated for murder, said she did not believe the system worked fairly in his case, and said she would expect defendants to have to put evidence forward rather than remaining silent; id. at 50-51;

- Juror J.G. had a degree in bible study and ministry, her demeanor was "too nice" to vote a guilty verdict, and other jurors were preferable; id. at 54-57;

- Juror J.W. had an uncle who she felt had been wrongly convicted of molesting a child, and she had a number of relatives who were active members of the Nation of Islam and Mr. Berardinelli was concerned that Nation of Islam and Five-Percenters have similar philosophies and communicate through a similar type of code; id. at 57-59; and

- Jurors C.J., C.W., L.C., and A.D. were all current or former social workers, a group which Mr. Berardinelli described as "reflexively liberal," id. at 47-48, 52-54.

Mr. Berardinelli testified, as well, that he does not strike based on race or gender. Id. at 72.

### 3.    Ruling of Magistrate Judge Rice

Magistrate Judge Rice issued his R & R after the conclusion of the evidentiary hearing. He determined that Judge Hughes had given inconsistent reasons for her rejection of the Batson claim, and rejected her § 2245 certificate because it lacked "persuasive value and should be disregarded" as a result of questionable statements of fact, as well as inaccurate statements of law. R & R at 23. Magistrate Judge Rice further found that Judge Hughes had incorrectly overruled the Batson objection on the basis that four African American women were seated on

the panel, ending the Batson analysis at step one, without the prosecution placing race- or gender-neutral reasons for the strikes on the record. R & R at 19-20. The magistrate judge found that Judge Hughes had offered in her subsequent §1925 opinion a "second – and new – basis" for rejecting Saunders's claim: that the Commonwealth "provided a race neutral basis for each strike." R & R at 20-21. Magistrate Judge Rice found that Judge Hughes, in her § 2245 certificate, had "recast her denial of Saunders'[s] Batson challenge" by citing to "'unequivocal, race-neutral explanations' offered . . . during an off the record sidebar, which was not previously mentioned." R & R at 23.

Having rejected the certificate of the trial judge as not credible and crediting only portions of Mr. Berardinelli's testimony, Magistrate Judge Rice determined the decision at trial - rejecting the Batson objection based the seating of four African American women on the panel – to be contrary to clearly established Supreme Court precedent. R & R at 27. Magistrate Judge Rice concluded that the trial judge's "alternate finding" that the prosecutor had provided race-neutral explanations for each strike, articulated in the 1925(a) opinion and quoted by the Superior Court in its affirmance, was based on an unreasonable determination of the facts in light of the evidence on the record and, therefore, not entitled to deference. R & R at 28.

The magistrate judge then proceeded to a de novo Batson burden-shifting analysis, finding that Saunders met his burden at step one by showing the Commonwealth's pattern of using its first eight consecutive peremptory strikes to exclude African American women. R & R at 28. At step two, the magistrate judge examined the explanations for his strikes offered by the prosecutor, see R & R at 26, and found them to provide race- and gender-neutral bases for each strike. R & R at 29. The magistrate judge found these reasons supported by the prosecutor's

notes and the juror questionnaires. Despite "troubling . . . complications" regarding the handling of the case by the state court, the magistrate judge found no evidence in the record that the prosecutor had a race- or gender-based motivations for his strikes. R & R at 29.

It is very important to note that Saunders's counsel did not make any effort to expand the evidentiary record before Magistrate Judge Rice. There are no reasons given in the record for the failure to call Saunders's trial defense counsel, who, assuming they were available, could have provided testimony either corroborating or contradicting the recollection of Judge Hughes and Assistant District Attorney Berardinelli.

    **4**.    **Analysis**

        **a.**    **Consideration of §2245 Certificate**

In addition to filing a separate response to Saunders's objections (ECF No. 48), the Commonwealth has submitted a brief objecting to the portion of the magistrate judge's opinion concerning the credibility of the trial judge. Resp. Obj. at 2 (ECF No. 46). The Commonwealth argues that the §2245 certificate submitted by Judge Hughes is entitled to deference. Id. at 10. In the spirit of "federalism and comity," the Commonwealth requests that this Court decline to adopt that portion of the R & R. Id. at 11. The undersigned has carefully reviewed Magistrate Judge Rice's reasons for his largely discrediting and not giving any weight to the certificate by Judge Hughes, and respectfully disagrees with this conclusion for the following reasons.

Section 2245 states that "[o]n the hearing of an application for a writ of habeas corpus to inquire into the legality of the detention of a person pursuant to a judgment the certificate of the judge who presided at the trial resulting in the judgment, setting forth the facts occurring at the trial, shall be admissible in evidence. Copies of the certificate shall be filed with the court in

which the application is pending and in the court in which the trial took place."  28 U.S.C. §

2245.

One obvious purpose of § 2245 is to allow a federal court to rely on a state court judicial

officer with knowledge of the state court proceedings, usually the trial judge, for recollection of

facts not appearing on the record.  As in this case, reconstruction of the state court record is

sometimes difficult or impossible due to missing transcripts or briefs, or because arguments,

discussions, or testimony occurred off the record.  In such a case, reconstruction of the record

becomes necessary for the federal district court to rule in accordance with the provisions of §

2254.

### i.      Precedents on § 2245

There are few precedential appellate decisions addressing the standard of review for a

certificate submitted to the district court in a habeas proceeding pursuant to 28 U.S.C. § 2245.

The Third Circuit last discussed this provision of the habeas statute in U. S. ex rel. Fox v.

Maroney, 385 F.2d 839 (3d Cir. 1967), expressing favor for "every possible utilization of this

section to facilitate the disposition of these cases."  Id. at 840.  The Third Circuit  instructed that

a certificate be made part of the record prior to an evidentiary hearing because, otherwise,

"evidence might be entered into the record without any opportunity afforded the petitioner to

challenge its credibility."  Id.  (holding the district court erred for receiving a letter from a trial

judge "explaining his version of the relevant events" because the letter was received after the

evidentiary hearing).

Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), determined that a state court's

findings of fact submitted in a §2245 certificate should be "presumed to be correct under 28

U.S.C. § 2245©."  Nonetheless, in <u>Bell v. Jarvis</u>, 198 F.3d 432, 441 (4th Cir. 1999), apparently

the only circuit court case construing § 2245 post-AEDPA, the Fourth Circuit later counseled

against allowing "posttrial assertions [to] satisfy the deficiencies in the trial court's record.'" <u>Id.</u>

at 441 (concluding that "findings of fact" provided in the certificate on the basis for closure of

the courtroom during trial "submitted . . . four years after trial" could not "conclusively justif[y]

closure" where Waller required adequate findings on the record) (citing Waller v. Georgia, 467

U.S. 39, 49 n.8 (1984)).  The Fourth Circuit has also rejected a certificate where the trial judge's

statements were too equivocal, see e.g., Strader v. Troy, 571 F.2d 1263 (4th Cir. 1978), while the

Sixth Circuit declined to credit a certificate the court found to be at odds with the trial record.

Wang v. Withworth, 811 F.2d 952, 957 (6th Cir.), cert. denied, 481 U.S. 1051 (1987).

In Weidner v. Thieret, 932 F.2d 626, 632 (7th Cir. 1991), the Seventh Circuit indicated a

need to approach a § 2245 certificate with scrutiny when the certificate "involve[s] inquiries into

the mental processes of state trial court judges," not simply fact finding.  The court noted that,

while the statute allows for certificates elaborating on "facts occurring at trial," courts have

construed this phrase broadly, to include "the trial judge's state of mind with respect to a

particular issue at a particular time at trial."  Id. (citing Bassette, 915 F.2d at 939; Gray v. Estelle,

574 F.2d 209 (5th Cir. 1978)).  Recognizing concerns with "human memory and cognition," the

Seventh Circuit concluded that "recourse to the testimony of a state trial judge concerning the

mental processes that underlay [a] ruling should be had only" where those reasons "are wholly

unavailable from the record."  Id. at 633 (citing Washington v. Strickland, 693 F.2d 1243,

1262-63 (5th Cir. Unit B 1982) (en banc ), rev'd on other grounds, 466 U.S. 668 (1984)).  "Even

then, the certifications or affidavits must be carefully evaluated to determine if they are consistent

with relevant record evidence." 932 F.2d at 633 (concluding that there was no error in instructing the district court to allow an affidavit from the state trial judge and noting that none of the trial judge's findings were "contradicted by the testimony of witnesses at the motion to suppress").

### ii.    Reasons for Rejecting Magistrate Judge Rice's Conclusion

In light of the mandate set forth in AEDPA that "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), deference must be given the factual findings put forth by a state trial judge. In making his credibility findings regarding Judge Hughes's § 2245 certificate, Magistrate Judge Rice did not make any reference to the presumption of correctness mandated by § 2254(e)(1).

This Court will thus presume correct the factual findings contained within a § 2245 certificate "if they are consistent with relevant record evidence" in all material respects. Weidner, 932 F.2d at 633.

Like any state officer elected or appointed into office and sworn to uphold the law, the state court trial judge has a duty to provide to this Court a truthful and accurate statement of the facts, as recollected, and this Court must and will presume that a state court trial judge is acting in accordance with that duty.[10] This Court has found no precedent that warrants a federal judicial

---

[10] Without evidence to the contrary, the Commonwealth is entitled to a presumption that Judge Hughes has acted in accordance with the law and provided an accurate recollection of the state court proceedings in her § 2245 certificate. See Perkins v. Matthews, 400 U.S. 379, 394 (1971) (determining that municipal officials would be entitled to the presumption that they conducted local elections in accordance with Mississippi law unless evidence showed otherwise) (citing First Nat'l Bank of Albuquerque v. Albright, 208 U.S. 548, 553 (1908)); see also Kennedy v. Upper Milford Tp. Zoning Hearing Bd., 834 A.2d 1104, 1123 (Pa. 2003) (holding that plaintiffs failed to meet their burdens of proof and persuasion to establish a violation of the 1998 Sunshine

officer discrediting such a factual certification, as Magistrate Judge Rice has appeared to do.

In this case, this Court concludes, with great respect for Magistrate Judge Rice, that he did not accord the requisite deference required under § 2245. First, there is no material discrepancy between Judge Hughes's § 1925 opinion and her § 2245 certificate. The former makes a specific factual statement "each strike exercised by the Commonwealth was race-neutral" and the latter repeats the same factual findings. Certificate at ¶ 8, last sentence.

Second, Mr. Berardinelli's testimony corroborates the statements in Judge Hughes's certificate in all material respects. Magistrate Judge Rice discredited a portion of Mr. Berardinelli's testimony concerning the details of the off the record conversation solely because of (1) discrepancies between his testimony and Judge Hughes's certificate regarding whether the parties believed the conversation was being recorded and (2) his conclusion it was inconceivable that the off the record conversation provided opportunity for Mr. Berardinelli to give Judge Hughes "the type of detailed justifications" for each strike that he offered in his evidentiary hearing testimony. R & R at 24-25. This Court finds the issue of whether any of the parties believed the sidebar conversation "was being recorded" largely irrelevant to the merits of Saunders's Batson claim, and also disagrees that the discrepancies noted above required rejection

---

Act because the evidence was "inadequate to overcome the presumption of regularity and legality that obtains in connection with proceedings of local agencies") (citing <u>Albert v. Lehigh Coal & Nav. Co.</u>, 246 A.2d 840, 845 (Pa. 1968) ("There is a prima facie presumption of the regularity of the acts of public officials which exists until the contrary appear.")). In accordance with their oaths of impartiality, trial judges are strongly presumed to "conduct all proceedings under their charges with honesty and integrity." <u>Tai-Nan v. Palkovich</u>, No. 05-CV-2655, 2006 WL 2583567, at *13 (E.D. Pa. Sept. 5, 2006) (Green, S.J.) (rejecting habeas petitioner's claim that he was denied due process when the trial judge refused to recuse himself from the bench trial after viewing petitioner's presentence report) (citing <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 831-832 (1986)).

of the facts asserted, in the absence of a specific finding that Mr. Berardinelli was not credible. Indeed, Magistrate Judge Rice largely relies on Mr. Berardinelli's testimony in recommending denial of Saunders's <u>Batson</u> claim.

Thus, there is nothing in the record to contradict Judge Hughes's statement that Mr. Berardinelli gave "unequivocal, race neutral explanations for each of his peremptory challenges" in the off the record conversation. § 2245 Certificate at ¶ 8. Neither party contests that an off the record conversation occurred in which defense counsel raised the <u>Batson</u> objection. The occurrence of an off the record discussion is supported by the trial transcript. <u>See</u> Sept. 10, 2004 Tr. at 162; Habeas Pet. at 14.

Third, Saunders has offered no independent evidence to refute the certificate by Judge Hughes or Mr. Berardinelli's testimony. As stated above, Saunders has provided no showing as to why he did not call at Magistrate Judge Rice's evidentiary hearing any of the three defense attorneys present at trial.

Lastly, the statement by Judge Hughes that she relied on her notes was not credited by Magistrate Judge Rice, but deserves credit. There is no basis in the record to discredit this factual statement. Judge Hughes stated at trial that she would retain her notes. As the Seventh Circuit recognized in <u>Weidner</u>, a state trial judge's recollection is subject to the limits of "human memory and cognition" in recalling events that occurred six years prior, 932 F.2d at 633. The Court does not find it improper that Judge Hughes refreshed her recollection in reconstructing the record.

Thus, this Court declines to adopt the findings of Magistrate Judge Rice as to the credibility of the § 2245 certificate submitted by Judge Hughes and will give deference to the

facts offered by Judge Hughes in the certificate. To the extent Magistrate Judge Rice and this Court are entitled to rely on the state court record, Saunders failed to present "clear and convincing evidence" to contradict the state court factual findings. See 28 U.S.C. § 2254(e)(1).

### b.     **Consideration of *Batson***

This Court will proceed to review the discussion of Saunders's Batson claim within Magistrate Judge Rice's R & R, but will do so giving full credit to Judge Hughes's certificate and Mr. Berardinelli's testimony.[11]

### i.     **Step One: Prima Facie Case**

This Court agrees with Magistrate Judge Rice that Judge Hughes incorrectly interpreted Batson at trial. As the Third Circuit stated in Brinson v. Vaughn, 398 F.3d 225 (3d Cir. 2005), Batson was "designed to ensure that a State does not use peremptory challenges to remove any black juror because of his race" and a decision to accept certain African American jurors "does not cure discrimination against others." Id. at 233 (quoting Batson, 476 U.S. at 99 n. 22). The requisites for a prima facie Batson challenge, as stated by Judge Hughes at trial, in her subsequent § 1925 opinion, and § 2245 certificate, were "contrary to . . . clearly established

---

[11]The Court also observes, notwithstanding that Judge Hughes did not state the Batson requirements in full, that crediting Judge Hughes's certificate and Mr. Berardinelli's testimony, and the fact that Judge Hughes concluded that the Commonwealth's strikes were race-neutral, may have warranted Magistrate Judge Rice concluding that the state record showed proper Batson procedure had been followed, at least as to step two. This would require a conclusion that even though Judge Hughes rejected defendants' claim that the defendants established a prima facie case, by proceeding to step two and making a factual finding of race neutrality, she had in effect proceeded as if a prima facie showing had been established. Otherwise, there would have been no reason to proceed to step two, although the record is clear.

federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).[12] However, an incorrect legal interpretation by the state trial court judge is not grounds for discrediting her factual recollections of events not appearing in the record, or her factual findings based on her understanding of what occurred in her court.

A defendant establishes a prima facie case at step one by demonstrating that "the totality of the relevant facts gives rise to an inference of discriminatory purpose." Williams v. Beard, 637 F.3d 195, at 214 (2011) (citing Johnson, 545 U.S. at 168). In Batson, the Supreme Court identified two examples of circumstances relevant to the step one totality inquiry. Id. First, a defendant may "proffer evidence that the government exercised a 'pattern of strikes against black jurors included in the particular venire, [which] might [then] give rise to an inference of discrimination." Id. (citing Batson, 476 U.S. at 97). Second, the "prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Id. The Third Circuit has concluded that "[s]tatistical evidence may be sufficient by itself to make out a prima facie case of racial discrimination," Id. (citing Jones v. Ryan, 987 F.2d 960, 971 (3d Cir. 1993); Overton v. Newton, 295 F.3d 270, 278 n. 9 (2d Cir. 2002)), "in the absence of any circumstance (such as a venire composed almost entirely of African Americans) that might provide an innocent explanation." Brinson, 398 F.3d at 234–35.

In Williams, the Third Circuit found the strike rate to have exceeded 85%, determining that "in a venire that was less than 40% black, it [was] hardly a leap to conclude that a strike rate

---

[12]It also appears that the Superior Court, by finding that Judge Hughes did not abuse her discretion in handling the Batson challenge, likewise applied an incorrect legal standard, but this may have resulted, in part, from Saunders's pro se inadequate analysis in presenting this issue.

of 87.5% raise[d] an inference of discrimination." 637 F.3d at 215; (citing <u>Holloway v. Horn</u>, 355 F.3d 707, 722 (3d Cir. 2004) (having "little difficulty" finding a prima facie case where prosecutor used eleven of twelve strikes against African American venirepersons); <u>Brinson</u>, 398 F.3d at 234-35 (finding prima facie case where Commonwealth used thirteen of fourteen strikes against African Americans)). Although finding the strike rate sufficient to establish a prima facie case, the <u>Williams</u> Court further concluded that a disparity between acceptance rates of African American and white jurors also raised an inference of discrimination. 637 F.3d at 215 (contrasting an acceptance rate of 26.3%, accepting 5 of 19 African jurors, with an acceptance rate 90%, accepting 19 of 21 white jurors) (citing <u>Bond v. Beard</u>, 539 F.3d 256, 270 (3d Cir. 2008)).

In this case, the record shows that the Commonwealth had used eight consecutive peremptory strikes against African American women by the time that defendants made their <u>Batson</u> objection. This Court concurs with the conclusion of Magistrate Judge Rice that the Commonwealth's pattern of strikes is "strong enough to suggest an intention of keeping [African American women] off the jury." <u>Holloway</u>, 355 F.3d at 722; <u>see</u> R & R at 28. In addition, the record shows that the Commonwealth accepted 5 of 13 African American women or 38%, in contrast to accepting 10 of 10 white venirepersons, contributing to the inference of discrimination. <u>Williams</u>, 637 F.3d at 215.

Therefore, this Court adopts the conclusion of Magistrate Judge Rice that clearly established Supreme Court precedent under <u>Batson</u> obligated the state court to find a prima face case and to require the prosecutor to state the reasons for his strikes and to analyze those reasons under step two of the <u>Batson</u> analysis.

## ii.     <u>Step Two: Commonwealth's Evidentiary Burden</u>

At step two, the Commonwealth must satisfy its burden by "presenting a comprehensible reason" for each of the challenged strikes. <u>Bond</u>, 539 F.3d at 264. There is no requirement that the reason be "'persuasive or even plausible' so long as the reason is not inherently discriminatory." <u>Id.</u> (citing <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006)).

Notwithstanding the trial court's identification of the incorrect legal standard at step one, having found the § 2245 certificate to be credible, this Court concludes that Judge Hughes did, in fact, find the prosecutor identified race-neutral reasons for his strikes, as stated in her § 2245 certificate and § 1925 opinion. This Court has also concluded that Mr. Berardinelli's testimony corroborates Judge Hughes's recollection in large part. Thus, this Court does not adopt the portion of Magistrate Judge Rice's opinion concluding that Judge Hughes failed to perform step two of the Batson analysis. See R & R at 28. If Magistrate Judge Rice had credited Judge Hughes's certificate, for the reasons stated above, it is likely that Magistrate Judge Rice would have likewise concluded that Judge Hughes adequately performed step two.[13]

Based on the totality of the record, the Court adopts Magistrate Judge Rice's determination that the Commonwealth was able to demonstrate a race- and gender-neutral basis for each of the eight peremptory strikes through Mr. Berardinelli's testimony, which was corroborated by both the individual voir dire questionnaires and Mr. Berardinelli's contemporaneous jury selection notes. R & R at 29 (citing Sept. 8, 2010 Tr. 44-62; Exs. P1-P6;

---

[13] If Magistrate Judge Rice had given Judge Hughes's certificate the requisite deference, Magistrate Judge Rice may have concluded that an evidentiary hearing was not necessary. However, since he had the hearing, this Court will rely on the record established at the hearing and, in part, Magistrate Judge Rice's conclusions based on the hearing, as specified above.

Ex. R3).

### iii.      Step Three: Analysis of Motivation

A trial court may not simply stop at step two but, instead, "<u>must</u> conduct an analysis of the proffered reason for the strike under step three to determine if the reason the prosecutor offers is merely a pretext designed to mask the improper consideration of race to exclude jurors." <u>Coombs v. Diguglielmo</u>, 616 F.3d 255, 262 n.5 (3d Cir. 2010) (citing <u>Johnson v. California</u>, 545 U.S. 162, 171 (2005)); Bond 539 F.3d at 265 (concluding, consistent with Coombs, that, when a defendant establishes a prima facie case, a trial judge must reach both steps two and three). The Third Circuit has interpreted the "'adjudication on the merits' language" of § 2254(d) "to mean that 'when, although properly preserved by the defendant, the state court has not reached the merits of the claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." <u>Coombs</u>, 616 F.3d at 260 (citing 28 U.S.C. § 2254(d)(8); <u>Holloway</u>, 355 F.3d at 719)).

At the third and final step of the <u>Batson</u> analysis, the trial court must evaluate "'the persuasiveness of the justification proffered by the prosecutor." <u>Bond</u>, 539 F.3d at 264 (citing <u>Rice</u>, 546 U.S. at 538). The opponent of the strike carries the "ultimate burden of persuasion" and must show that "it is more likely than not that the prosecutor struck at least one juror because of race." <u>Bond</u>, 539 F.3d at 264 (citing <u>Wilson v. Beard</u>, 426 F.3d 653, 670 (3d Cir. 2005)). At this step, the trial court must "make a finding regarding the prosecutor's motivations," <u>Id.</u> (citing <u>Bronshtein v. Horn</u>, 404 F.3d 700, 723 (3d Cir. 2005)), "address[ing] and evaluat[ing] all evidence introduced by each side (including all evidence introduced at the first and second steps) that tends to show that race was or was not the real reason" behind the challenged strikes.

Hardcastle, 368 F.3d at 259 (quoting Riley v. Taylor, 277 F.3d 261, 277-78 (3d Cir. 2001) (en banc)).

The Court must focus "upon the prosecutor's subjective motivation, which ideally includes an assessment of the demeanor and credibility of the various voir dire participants." Williams, 637 F.3d at 216. A comparative analysis between stricken and accepted jurors "is relevant to determining whether the prosecution's asserted justification for striking the black juror is pretextual." Id. (quoting Riley, 277 F.3d at 282). The state court should consider "how reasonable, or how improbable, the explanations are; and . . . whether the proffered rationale has some basis in accepted trial strategy." Miller-El, 537 U.S. at 338-39.

This Court notes the Third Circuit's exhaustive analysis of the Batson issue in the recent case of Williams v. Beard, supra, which affirmed the undersigned's analysis of Batson. In that case, the state trial court, in a PCRA hearing, had allowed an thorough evidentiary hearing on Batson issues, but the petitioner had then attempted, in this Court, to take discovery and have another evidentiary hearing. The undersigned denied these requests, but engaged in a full-fledged Batson review, consisting of extensive analyses of steps one, two and three under Batson. The undersigned concluded that the state court record had established non-race-based reasons for the exercise of peremptory challenges by the prosecutor, a conclusion that was affirmed by the Third Circuit.

In the recent Third Circuit case of Bond v. Beard, 539 F.3d 256 (3d Cir. 2008), the Third Circuit thoroughly discussed the third step under Batson. Initially, the court stated, "third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating 'the persuasiveness of the justifications'

proffered by the prosecutor, but 'the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike.'" Id. at 264 (quoting Rice v. Collins, 546 U.S. 333, 338 (2006)).

The Third Circuit then determined to apply the deferential AEDPA standard, which depends on

> whether the state courts reached the third part of the Batson analysis and resolved it on the merits. If the state courts performed a step-three analysis and made a finding about the prosecutor's intent, that finding is presumed correct, see 28 U.S.C. § 2254(e)(1), and Bond is entitled to relief only if (1) the state court decision was "contrary to," or involved an "unreasonable application" of, Supreme Court precedent, id. § 2254(d)(1); or the finding was unreasonable in light record before the state court, id. § 2254(d)(2); or petitioner rebutted the finding with "clear and convincing evidence" in the district court.

Bond, 539 F.3d at 264. However, if the state court did not make a step three finding, then the federal court should not apply AEDPA deference and must proceed de novo. Id.

Based on the Bond holding and the state court record, this Court will determine that a step three analysis was made. However, alternatively, this Court will also make a de novo review, as did Magistrate Judge Rice.

## A. Deferential Review

Bond teaches that the step three analysis does not have to contain specific words or even specific findings of fact. In Bond, the court affirmed a ruling by the district court that applied the deferential standard, even though the language used in the state court was not precise and the state courts "repeatedly failed to identify the three steps of the Batson analysis explicitly." See 539 F.3d at 268-69.

The Third Circuit found that the record gave "serious cause for concern that the state courts did not reach the third step of the Batson analysis[,]" based in part on a "troubling" statement by the trial court "that it was 'not going to try and get into the prosecutor's mind' and

-28-

suggest[ing] that it only needed 'some objective statement that's racially neutral.'" <u>Id.</u> at 268.

The Third Circuit found that statement "to indicate that the trial court believed that it could stop

after the prosecutor satisfied the second step of the Batson analysis by stating a race-neutral

explanation for a strike" and the voir dire transcript did not clarify whether "the trial court or the

Pennsylvania Supreme Court believed that the prosecutor truly had acted in a race-neutral fashion

(satisfying step three of the Batson analysis), or merely that the stated explanations were

race-neutral (at step two)." <u>Id.</u>

      However, upon review of the state court record, the Third Circuit concluded that both the

trial court and the Pennsylvania Supreme Court had, in fact, "reached the third step of the Batson

analysis and resolved it in favor of the Commonwealth." Id.  As to the trial court's Batson

analysis, the Third Circuit concluded as follows:

> The trial court may have stated its resolution of the Batson analysis inartfully during voir
> dire, but its order denying post-trial motions shows that it reached Batson's third step. It
> wrote: "Reviewing the totality of the circumstances there is no showing of intentional
> discrimination by the prosecutor in the jury selection process and defendants are not
> entitled to a new trial on that basis." The reference to a "showing of intentional
> discrimination" puts this conclusion within step three of the Batson analysis. Here, the
> trial court does more than conclude that the prosecutor offered a race-neutral explanation
> for a strike; it concludes that Bond did not meet his burden of showing that purposeful
> racial discrimination, not the proffered explanation, actually motivated the prosecutor's
> conduct. This step-three conclusion indicates that the trial court indeed did understand the
> steps of a Batson analysis.

<u>Id.</u> at 268-69 (internal citations omitted).

      The Third Circuit determined that "the Pennsylvania Supreme Court essentially

incorporated the reasoning of the trial court" regarding step three, "[b]y 'describ[ing] the trial

court as accepting the prosecutor's explanations as 'legitimate and race neutral,' and referred to

the trial court's findings 'as to the legitimacy of the race neutral responses offered in this case.'"

Id. at 269.  The Third Circuit found that had the Pennsylvania Supreme Court "simply inquired

into the existence of 'race neutral' explanations or responses," its analysis would have concluded

at step two.  Id.  Instead,

> The emphasis on legitimacy demonstrates that the Supreme Court considered the third
> step of the Batson analysis. But it also described the legitimacy of those "race neutral"
> explanations. It considered, in other words, whether the prosecutor had told the truth
> when he offered race-neutral explanations. It concluded that he had done so. This
> amounts to a determination on the merits at the third step of the Batson analysis.

Id.  As a result, the Third Circuit held that the deferential AEDPA standard of review applied to

the state court rulings.  Id. (citing Taylor v. Horn, 504 F.3d 416, 433 (3d Cir.2007)).

Applying the Bond standard to the present state court record, including the § 2245

certificate (although not including Mr. Berardinelli's testimony), this Court concludes, from the

totality of circumstances, that the third step was reached.  Judge Hughes's findings are

inconsistent with any finding of intent.  This includes her remarks on the record following the off

the record conversation; her statement in the § 1925 post-trial opinion that "each strike exercised

by the Commonwealth was race-neutral [and] the appellant has no viable claim of purposeful

discrimination" (emphasis added);[14] and her conclusion in ¶ 9 of her § 2245 certificate, "that

neither side was engaging in race-based strikes."  Remembering that the burden is on the

petitioner, this Court concludes, as the Third Circuit did in Bond, that Saunders did not meet his

burden of showing that purposeful racial discrimination, and not the proffered explanation,

actually motivated the prosecutor's conduct.  In this context, with respect to the Batson motion

---

[14]In Batson, the Supreme Court used the word "purposeful," 476 F.3d at 86.  In Williams, the
Third Circuit most recently used the word "purposeful" to describe the defendant's burden at step
three, 637 F.3d at 205.  Thus, when Judge Hughes's finding rejected a claim of "purposeful
discrimination," she satisfied step three.

made at trial, all defense counsel were silent after Judge Hughes made her findings and asked if any counsel wanted to speak further. See Sept. 10, 2004 Tr. at 166-68. Although this does not constitute a waiver of the Batson claim, this silence does waive any argument that Judge Hughes was required to be more specific in her Batson findings. Saunders's counsel had his chance to make a record that might have satisfied Saunders's burden in this court. He purposefully did not do so. Strategically, defense counsel had reason to leave the record as it was. To now allow Saunders grounds for relief would give him an advantage to which he is not entitled, based on his counsel's strategic silence at trial, and would be improper and unfair to the Commonwealth.

Concerning the appeal to the Superior Court, as noted above, Saunders, pro se, did not raise any argument about step three in the Superior Court and therefore its omission of that discussion is not determinative of anything. That court held that Judge Hughes acted properly within her discretion on the Batson issue. Thus, applying § 2254(e)(1), the state court record, as supplemented by Judge Hughes's certificate, allows this Court to conclude that under the totality of circumstances, step three was satisfied.

**B.**    **Alternate Analysis of Strikes of Specific Jurors - De Novo**

Alternately, in the case that the AEDPA deferential standard does not apply, as Magistrate Judge Rice held, the Court will perform a de novo review of this aspect of Saunders's claim. Having been given this opportunity, before Magistrate Judge Rice, Saunders only challenged one juror, an African American woman referred to as "J.G.," through juror-by-juror comparison. Pet.'s Obj. at 17.

Mr. Berardinelli testified at the evidentiary hearing that he struck J.G. on the basis that

she was "too nice" to render a verdict against the defendants and had a degree in Bible study ministry.  Sept. 8, 2010 Tr. at 54-56, 90.  As an alternative reason for striking J.G., Mr. Berardinelli testified at the evidentiary hearing that he challenged J.G. with the understanding that the group of 14 jurors of which J.G. was a part was "much much better on the back end," including individuals that did not raise the same "red flags" as J.G. and, at least one person Mr. Berardinelli described as a "really well suited juror."  Id. at 55-56.

Saunders now challenges Mr. Berardinelli's explanation of his exclusion of J.G.  Pet.'s Obj. at 13.  Saunders points in comparison to the prosecutor's acceptance of (1) a white male reverend, with the initials K.C., and (2) a white woman, referred to as V.S., who the prosecutor described as "nice" and "emotive."[15]  Pet.'s Obj. at 13-17.

_____

[15] Mr. Berardinelli's contemporaneous notes describe J.G. in the following terms:

> (14) [J.G.]
> 2 kids          too nice
> B/F/North
> bible study/ministry
> rehabilitation
> husband post office
> juror before process fair

See Sept. 8, 2010 Tr. at Ex. R3.

Mr. Berardinelli's contemporaneous notes for the comparators K.C. and V.S. read as follows:

> (34) [K.C.]
> W/M/Germantown (from Buffalo)
> Minister (works for foreign mission board) Presbyterian
> 2 kids
> previously on federal grand jury
>
> . . . .

In his testimony, Mr. Berardinelli made a distinction between J.G. and K.C., stating that he has found "clergy or ministry people" to "fall into two categories . . . some that are . . . spare the rod, spoil the child types, and others that are . . . save the world." Sept. 8, 2010 Tr. at 55. Mr. Berardinelli perceived K.C. who was empaneled on the jury as "a very stern old guy" of the latter category, while J.G. was "too nice" and "raised a concern" that she might not be willing to vote guilty even if the evidence was present to convict him. Id. Mr. Berardinelli also drew a distinction between J.G. and V.S., indicating again that J.G.'s demeanor came across as someone who "even if the evidence is there, may not be willing to convict[,]" in contrast to V.S., who he perceived as a "decent person, but, nevertheless, . . . would be able to follow the evidence and actually convict if it's there." Id. at 90-91. [16]

This Court finds that Mr. Berardinelli's testimony provides reasonable non-race-based explanations as to the distinctions between J.G. and the two jurors offered by Saunders as comparators. Further, Mr. Berardinelli's justification that he recognized several potential jurors

_____

(27) W/F/Overbrook/Married/2 kids - nice lady
- masters degree
- victim (house robbed)
- can follow law
- concerned by Δ's
- would have sympathies for both

See id.

[16] Saunders raises an additional issue regarding V.S.'s answers in her juror questionnaire regarding whether she would be hampered in her ability to render a decision due to her moral beliefs or whether she would have problems applying the instructions of the trial judge. Pet.'s Obj. at 13. However, the trial transcript and the questionnaire itself make clear that this juror's reservations were primarily due to her views on the death penalty, which Judge Hughes explained to her was not an issue in this case. Sept. 10, 2004 Tr. 23-32. Second, while V.S. expressed to Judge Hughes that she might be emotional and have sympathies for "both sides," she also stated that she would be able to render a verdict in this case. Id.

to be better suited than J.G. reflects a legitimate and reasonable trial strategy.  As Magistrate

Judge Rice indicates, the juror questionnaires, trial transcript of the voir dire sessions, and Mr.

Berardinelli's contemporaneous notes each provide corroboration for the prosecutor's

explanations.  See Sept. 9, 2005 Tr. at 216-30, 262-84; Sept. 10, 2004 Tr. at 89-99; Sept. 8, 2010

Tr. at Exs. P2, P4, P6; R3.

As additional evidence in support of his Batson claim, Saunders points to Mr.

Berardinelli's exclusion of juror R.J. because she was not able to correctly identify a major

intersection near to her house, as well as Mr. Berardinelli's notes regarding juror M.H., which

indicated that she had a son who was Muslim.  Pet.'s Obj. at 14.  Mr. Berardinelli explained in

his testimony that he was concerned that R.J. would be unable to follow instructions regarding

conspiracy, noting that she was not only unable to identify the major intersection near to her

home, but had additionally provided unresponsive answers on her questionnaire.  Sept. 8. 2010

Tr. at 44-45.  As to M.H., Mr. Berardinelli testified that the religion of the juror's son was not

relevant, but written it down as a direct quote regarding her son's participation in a program

called "Parents Against Recidivism."  Id. at 83.  Saunders offers no comparators for these jurors

and the Court finds Petitioner's argument as to these jurors unpersuasive.

Finally, Saunders argues that the pattern of strikes; Mr. Berardinelli's categorical

exclusion of social workers, which Saunders argues only applied to African American women;

and Mr. Berardinelli's preference for "transplants" or people originally from outside of

Philadelphia demonstrate pretext.  Pet.'s Obj. at 13-18.  The Court finds both Mr. Berardinelli's

justification regarding the exclusion of social workers and regional preference for people from

outside of Philadelphia to be supported by Mr. Berardinelli's notes and the trial transcript and to

establish reasonable race-neutral reasons tied to legitimate trial strategies. As to the statistical

evidence, the Court agrees with the conclusion of Magistrate Judge Rice that, while the pattern of

strikes and other statistical evidence was sufficient to meet Saunders's burden at step one,

Saunders has failed to meet his steps two and three burden of persuasion to establish that the

Commonwealth exercised its peremptory strikes based on discriminatory motivation. See R & R

at 29.

### c.      Limitations on Cross-Examination of Mr. Berardinelli at Evidentiary Hearing

Saunders objects to the ruling made by Magistrate Judge Rice limiting the scope of his

questioning of Mr. Berardinelli at the September 8, 2010 evidentiary hearing. Pet.'s Obj. at 18-

20. On cross-examination, counsel for Saunders asked Mr. Berardinelli how often he had been

the subject of a Batson challenge. Sept. 8, 2010 Tr. at 67. The Commonwealth objected. Id.

Saunders offered two bases for the relevance of the question: (1) to test the credibility of Mr.

Berardinelli's testimony that he generally takes notes about juror race and gender in case of a

Batson challenge, and (2) as evidence of Mr. Berardinelli's state of mind regarding whether he

was basing his strikes on impermissible factors. Id. Magistrate Judge Rice sustained the

objection on grounds of relevance, noting the general understanding amongst "everyone in the

room . . . that Batson challenges frequently are raised at trial." Id. at 67-68.

The Federal Magistrates Act provides two separate standards of judicial review: "de

novo" for magistrate resolution of dispositive matters, see 28 U.S.C. § 636(b)(1)(B)-(C), and

"clearly erroneous or contrary to law" for magistrate resolution of nondispositive matters, see 28

U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R.

Civ. P. 72(a), the ruling by Magistrate Judge Rice on Saunders's evidentiary objection constitutes an order, rather than a recommendation and may only be modified or set aside by this Court if it is "clearly erroneous or is contrary to law."  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Rule 403 of the Federal Rules of Evidence permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The decision to exclude evidence under Fed. R. Evid. 403 is afforded "substantial discretion," McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d. Cir. 2009) (citing United States v. Eufrasio, 935 F.2d 553, 572 (3d Cir.1991)), and "a trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is arbitrary and irrational[.]"  Id. (quoting Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990)).

Given the "substantial discretion" allowed a trial judge excluding evidence pursuant to Fed. R. Evid. 403, McKenna, 582 F.3d at 461, Saunders has made no showing that this decision by Magistrate Judge Rice was "clearly erroneous" or "contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

**B.** **Sufficiency of the Evidence**

Saunders objects that there was insufficient evidence to support his conviction of one count of conspiracy to commit escape because there was no evidence that Saunders engaged in an illicit agreement.  Pet.'s Obj. at 21-24.  Saunders contends that, on direct review, Judge Hughes and the Superior Court relied on an erroneous finding that Saunders engaged in a conversation with Brown on July 2, 2001, when that conversation, in fact, occurred between Brown and

Saunders's alleged co-conspirator Prout.  Pet's Obj. at 21.  Saunders contends that Magistrate

Judge Rice made a similar error by relying on this conversation in determining Saunders's

sufficiency of the evidence claim.  Id.

A claim that the "evidence in support of [a] state conviction cannot be fairly characterized

as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt [is]

cognizable in a federal habeas corpus proceeding." Robertson v. Klem, 580 F.3d 159, 164-65

(3d Cir. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 321 (1979); see also Fiore v. White, 531

U.S. 225 (2001) (per curiam) ("We have held that the Due Process Clause of the Fourteenth

Amendment forbids a State to convict a person of a crime without proving the elements of that

crime beyond a reasonable doubt.")).   On habeas review, a district court applies the sufficiency

of the evidence standard "with explicit reference to the substantive elements of the criminal

offense as defined by state law," id. (quoting Jackson, 443 U.S. at 324 n. 16), asking "whether

after reviewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson,

443 U.S. at 319.

Under Pennsylvania law, a person commits escape "if he unlawfully removes himself

from official detention or fails to return to official detention following temporary leave granted

for a specific purpose or limited period." See 18 Pa. Cons. Stat. § 5121(a).  A person commits

conspiracy if he "enter[s] into an agreement to commit or aid in an unlawful act with another

person or persons, with a shared criminal intent, and an overt act was done in the conspiracy's

furtherance." Commonwealth v. Weimer, 977 A.2d 1103, 1106 (Pa. 2009) (citing 18 Pa. C.S. §

903; Commonwealth v. Rios, 684 A.2d 1025, 1030 (Pa. 1996)).  "[A] co-conspirator is not

relieved of liability because he is not present at the execution of the crime." <u>Commonwealth v.</u>

<u>Burton</u>, 330 A.2d 833, 835 (Pa. 1975) (quoting <u>Commonwealth v. Burdell</u>, 110 A.2d 193 (Pa.

1955)).

As quoted by Judge Hughes and cited by the Superior Court on <u>nunc pro tunc</u> appeal, the

experts translated the conversation in question as follows:

> Brown demanded to know why the appellant had not executed the agreed upon plan.
> Appellant explained that they had in fact been at the courthouse but the plan failed.
> Brown asked appellant, "where's the car at?"  Appellant responded: "On 18th . . ."
> Brown stated: "You got my car just sitting out there running . . . where is the gun?"
> Appellant responded: "In the car."

<u>See</u> <u>Saunders</u>, 946 A.2d at 780 (citing <u>Saunders</u>, 2666 EDA 2006, at *5).   The R & R similarly

quotes this passage at page 15.

Both the trial and Superior Court opinions cite the September 14, 2004 transcript at pages

196-97 for support that this conversation occurred between Saunders and Brown.  <u>Id.</u> Saunders

has now included that portion of the transcript as an exhibit to his Objections, stating that the

witness, Alan Cain, "plainly identifies co-defendant Brian Prout,[17] not Mr. Saunders, as the

speaker in C-14[,]" the exhibit identified as "Transcript of Recorded Conversation 7/2/01."

Pet.'s Obj. at 22; <u>see</u> Sept. 14, 2004 Tr. at 3-4.  Saunders further points to Mr. Berardinelli's

closing in which the prosecutor names Prout, not Saunders, in reference to the July 2, 2001

conversation.  Pet.'s Obj. at 22.  Without evidence of this July 2, 2001 conversation, Saunders

argues that there is insufficient evidence to support his conviction.

Despite arguing that this purported error has been perpetuated throughout direct review

---

[17] Brian Prout, while discussed in the opinions of the trial and Superior Courts as an alleged co-conspirator, is not listed in the trial transcripts as a co-defendant, nor mentioned in Judge Hughes's § 1925 opinion as such.  <u>See</u> 2666 EDA 2006, at * 2.

and by Magistrate Judge Rice, Saunders appears to have only now raised this issue for the first time in his objections to the R & R. This Court finds no mention of this argument in Saunders's habeas petition, nor did counsel raise the issue during the evidentiary hearing. An issue is waived if a petitioner fails to raise it and the issue could have been raised before trial, at trial, on appeal, in a habeas corpus proceeding, or in a prior proceeding. 42 Pa. Cons. Stat. § 9544(b). "[I]f [a] petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred ... there is procedural default for purposes of federal habeas[.]" Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

    Even without consideration of the July 2, 2001 conversation, this Court concurs with Magistrate Judge Rice's conclusion that the Superior Court decision to reject Saunders's sufficiency of the evidence claim was not contrary to, nor an unreasonable application of Supreme Court precedent. As Magistrate Judge Rice states, the state courts found the evidence to establish that Saunders paid multiple visits to Brown, in which the two discussed in "code" the plan to free Brown from custody, including a visit the day prior to the attempted escape. R & R at 15 (citing Saunders, 946 A.2d at 781). In addition to the July 2, 2001 conversation, the Superior Court specifically cited two translated conversations, on June 21, 2001, and June 27, 2001, in which Saunders and Brown discussed the difficulties of "effectuat[ing] an escape because there would be many police and court personnel around" and "reveal[ed] that [Saunders] indicated he had been scoping out the scene and that it had to be done right." Saunders, 946 A.2d at 782 (citing Sept. 20, 2004 Tr. at 246-51, 268-72). The Superior Court

relied on these two conversations to find that Saunders had not withdrawn from the conspiracy. As discussed in the R & R, the Superior Court further rejected Saunders's contention that he could not be convicted for conspiracy if he was not present during Brown's attempted escape, stating that "[i]t is well settled that a co-conspirator not present at the execution of the crime is not relieved of liability." Saunders, 946 A.2d at 782 (quoting Commonwealth v. Calloway, 459 A.2d 795, 797 (Pa. 1983)).

This Court adopts the conclusion of Magistrate Judge Rice that the sufficiency of the evidence claim is meritless.

**C.    Confrontation Clause**

Saunders alleges that the trial court limited the scope of cross-examination of Corbiscello's expert testimony, violating Saunders's Sixth Amendment right to confrontation. Pet.'s Obj. at 24. At trial and on direct review, Saunders challenged the disallowance by Judge Hughes of the following questions regarding Corbiscello's qualifications:

- Are you familiar with the federal court case of Mary versus Brodus [sic] in which a federal court says that –

- Have you spoken to any Five-Percenters that were members of the professions, such as the legal profession or medical profession?

See R & R at 10 (citing Direct Appeal Br. at 14; Sept. 21, 2004 Tr. at 105-06, 111). Saunders also objected to the disallowance of the following questions asked during cross-examination on the basis for Corbiscello's opinion.

- Would you say that you have knowledge about the Five-Percenters or members of the Five-Percenters organization who are not in prison or is your education only limited to Five-Percenters inside of prison?

- Do you know that the Five-Percenter School enjoys a not-for-profit tax status in New York?

- Did you know that the Five-Percenter School has after-school tutoring for children and substance abuse programs?

- Do you know any famous individual, such as Erika Baydu, who is a member of the Five-Percenters?

See R & R at 11 (citing Direct Appeal Br. at 14; Sept. 21, 2004 Tr. at 172).

In his objection to the R & R, Saunders contends Corbiscello was testifying as a "gang expert" and that the purpose behind Saunders's questions was to counter any bias and rebut an implication by his testimony that Five-Percenters are a criminal or high risk element. See Pet.'s Obj. at 24-26. Saunders contends, as well, that the questions were necessary to establish the limitations of Corbiscello's expertise due to the fact that his interactions and experience with Five-Percenters was restricted to the gang and prison context. Id. The Court finds these objections merely reiterate the arguments expressed in Claim Two of Saunders's habeas petition. See Habeas Pet. at 22. The Court adopts the determination of Magistrate Judge Rice that the Superior Court's decision, holding that Judge Hughes did not abuse her discretion in disallowing Saunders's questions, was not contrary to, nor an unreasonable application of Supreme Court precedent. See R & R at 11-12 (citing Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) (holding that courts have wide "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); Williams, 529 U.S. at 404-09; § 2254(d)(1)); see also Saunders, 946 A.2d at 786.

**V.    Certificate of Appealability**

This Court has decided to certify for appeal in this case the following issues:

1.     Whether the findings contained within a certificate filed pursuant to 28 U.S.C. § 2245 are subject to the deferential standard of 28 U.S.C. § 2254(e)(1). Given that consideration of Judge Hughes's certificate under § 2245 is subject to serious dispute between the undersigned and Magistrate Judge Rice, the Third Circuit may consider this issue worthy of appellate review.

2.     Whether the Commonwealth exercised its peremptory strikes in a discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79 (1986). The Court recognizes that reasonable jurists could disagree on the interpretation of the factual record, particularly Assistant District Attorney Berardinelli's striking of Juror J.G., number 27, since defendants raised a prima facie case of discrimination and there is a question whether Mr. Berardinelli gave a sufficiently race-neutral reason for striking Juror Number 27.

3.     Whether Saunders's failure, at trial, to specifically request the trial judge to proceed to step three of Batson, and failure, at the § 2254 evidentiary hearing, to call witnesses with knowledge of the state court proceedings should result in a waiver of any claim that Batson procedures were not followed.

**VI.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus will be denied, and a certificate of appealability will be issued with respect to Petitioner's <u>Batson</u> claim (Claim One). An appropriate Order follows.

O:\CIVIL 09-10\09-1916 Saunders v. Tennis\Saunders v. Tennis 09-1916 2254 memorandum.wpd